NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SONALI GURJAR,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>NORWOOD BOARD OF EDUCATION,<br>BERT AMMERMAN, *et al*.,<br><br>　　　　　　　　　Defendants. | Case No. 2:16-cv-1168 (SDW)(SCM)<br><br>**OPINION**<br><br>April 5, 2018 |

**WIGENTON**, District Judge.

Before this Court is Defendants Norwood Board of Education and Bert Ammerman's (collectively, "Defendants") Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

**I. BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff instituted this civil action against her former employer and supervisor, Defendants Norwood Board of Education ("Norwood") and Bert Ammerman ("Ammerman"), respectively.

1

(*See generally* Am. Compl., ECF No. 29.)  In 2011, Norwood hired Plaintiff as a guidance counselor. (Pl.'s Counterstatement of Undisputed Material Facts ("Pl.'s CSMF") ¶ 1, ECF No. 40-3.)  Brian Gatens ("Gatens"), who was Norwood's Superintendent and Plaintiff's supervisor from August 2011 until December 2013, reported that Plaintiff was "highly effective," and recommended renewing her employment for the 2012-2013 and 2013-2014 school years. (*Id.* ¶¶ 2, 6-12, 19.)  With Gatens and Norwood's approval, Plaintiff took maternity leave from November 2012 through June 2013. (Am. Compl. ¶ 18; ECF No. 37-6, Ex. R.)  When Gatens resigned in December 2013, Ammerman replaced him as Plaintiff's supervisor and Norwood's Interim Superintendent for the remainder of the 2013-2014 school year. (Pl.'s CSMF ¶¶ 6, 26-27.)  In March 2014, Ammerman told Plaintiff that he saw no reason not to renew her employment contract for the 2014-2015 school year and that he would expand her responsibilities. (*Id.* ¶¶ 29-30.)  However, Ammerman subsequently recommended Plaintiff for non-renewal at Norwood's board meeting on April 24, 2014; as a result, Plaintiff's employment was terminated.[1] (*Id.* ¶¶ 44, 50.)  Prior to making his recommendation, Ammerman did not conduct a performance review of Plaintiff or discipline her for unsatisfactory work performance. (*Id.* ¶¶ 27-28.)

On April 28, 2014, Plaintiff met with Ammerman and union co-President, Terri Sullivan ("Sullivan"), to discuss Plaintiff's tenure track. (*Id.* ¶¶ 52-53.)  At that meeting, Ammerman told Plaintiff that because she took maternity leave, "her tenure track had been interrupted, causing the tenure decision to be pushed to January of 2015." (*Id.* ¶ 54.)  Ammerman also stated that Plaintiff's pregnancy was "inconvenient to the District" and he did not recommend renewal because Plaintiff would be eligible for tenure mid-year. (*Id.* ¶¶ 55-57, 60.)  On April 30, 2014, Plaintiff emailed Ammerman stating that because she was a non-U.S. citizen, she was ineligible for tenure. Given

---

[1] This Opinion refers to the terms non-renewal and termination interchangeably.

that tenure was no longer an issue, Plaintiff stated that she would like to continue her employment at Norwood. (*Id*. ¶¶ 69-70.) Ammerman did not to change his recommendation to Norwood. (*Id*. ¶¶ 74-76.)

On May 1, 2014, during a second meeting with Ammerman and Sullivan,[2] Plaintiff asked Ammerman for the "real reason" why he was not recommending renewal. Sullivan testified that Ammerman's explanation suggested that "because of [Plaintiff's] ethnicity . . . [h]er manner of speech was not really compatible to the way American people spoke and understood," (Sullivan Dep. at 34:19-24), and that Plaintiff's citizenship status could be a problem because if she later became a citizen Ammerman would have to give her tenure. (Sullivan Dep. at 35:5-11; *see also* Pl.'s CSMF ¶¶ 87-89.) Plaintiff's last day of work at Norwood was on June 30, 2014.[3] (Am. Compl. ¶ 35.)

Plaintiff alleges that after she left Norwood, Ammerman interfered with her prospective employment with two other public schools. In or around June 2014, Plaintiff interviewed for a position with Closter Public Schools. (Pl.'s CSMF ¶ 119.) One of the interviewers contacted Ammerman and asked if he supported Plaintiff's application, and Ammerman responded by asking if anyone else applied for the position. (*Id.* ¶ 122.) Plaintiff did not receive a job offer from Closter Public Schools. On July 13, 2015, Plaintiff interviewed for a position with Haworth Public Schools. (ECF No. 37-6, Exs. DD, EE, FF.) During the interview, Plaintiff told the interviewers

---

[2] Plaintiff made a cell phone recording of the meeting which was subsequently transcribed. (ECF No. 40-6, Ex. 19; Sullivan Dep. at 32:11-14.)
[3] On May 6, 2014, Plaintiff submitted a letter of resignation which she subsequently rescinded. (Pl.'s CSMF ¶¶ 99-100.) Upon her return, Plaintiff was tasked with overseeing the New Jersey Assessment of Skills and Knowledge ("NJASK") testing and annual Section 504 evaluations. (*Id.* ¶¶ 101-02.) Plaintiff subsequently took three days of sick leave. (*Id.* ¶ 107.) When she returned to work the following week, Ammerman, disappointed with Plaintiff's handling of the NJASK testing, told her to leave the school, and reassigned the NJASK testing to other Norwood employees. (*Id.* ¶ 114, 116.)

that she and Ammerman did not part on good terms. (Pl.'s CSMF ¶¶ 126-28.) Plaintiff did not receive a job offer. (*Id*.)

On or about November 14, 2014, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination against Defendants. (ECF No. 40 at 38; Am. Compl. ¶ 41.) On or about December 7, 2015, Plaintiff filed a Charge with the EEOC against Ammerman alleging retaliation resulting from her initial Charge of Discrimination. (Am. Compl. ¶ 8.) The EEOC issued determinations in both matters on December 7, 2015 and February 1, 2016.[4] (*Id*. ¶¶ 7-8.) On March 1, 2016, Plaintiff commenced a civil action in this Court. (ECF No. 1.) On March 7, 2017, Plaintiff filed an Amended Complaint alleging: discrimination based on national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count I); discrimination based on sex/pregnancy in violation of Title VII (Count II); discrimination based on pregnancy and sex in violation of Title VII (Count III); violation of the Pregnancy Discrimination Act of 1978 (Count IV); discrimination based on national origin, nationality, and ancestry in violation of the New Jersey Law Against Discrimination (Count V); discrimination based on pregnancy in violation of the New Jersey Law Against Discrimination (Count VI); aiding and abetting (Count VII); retaliation in violation of Title VII (Count VIII); and intentional interference with prospective economic advantage (Count IX). (*See generally* Am. Compl.) Following a period of discovery, on September 25, 2017, a Stipulation and Order of Dismissal was filed as to Counts II and III of the Amended Complaint. (ECF Nos. 35-36.) Defendants filed the instant Motion for Summary Judgment on October 20, 2017. (ECF No. 37.) Plaintiff filed her opposition on November 20, 2017, and Defendants replied on November 27, 2017. (ECF Nos. 40, 43.)

---

[4] Based on the record, it is unclear as to what determinations were made by the EEOC.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

## III. DISCUSSION

### A. Counts I, IV-VI: Discrimination Claims Under Title VII, NJLAD, and PDA

Under Title VII, it is unlawful to "discharge any individual, or otherwise to discriminate against any individual" based on national origin or sex. 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act of 1978 ("PDA"), "which added new language to Title VII's definitions subsection[,]" "makes clear that Title VII's prohibition against sex discrimination applies to

discrimination based on pregnancy." *Young v. United Parcel Serv.*, 135 S. Ct. 1338, 1343-44 (2015); 42 U.S.C. §§ 2000e(k), 2000e-2(a). The New Jersey Law Against Discrimination ("NJLAD") prohibits discrimination based on national origin, nationality, ancestry, and sex. N.J. Stat. Ann. §§ 10:5-3, 10:5-12(a). Generally, "[c]ourts employ the Title VII evidentiary framework . . . when analyzing claims under the NJLAD" and the PDA. *Wesley v. Palace Rehab. & Care Ctr., L.L.C.*, 3 F. Supp. 3d 221, 230 (D.N.J. 2014) (citing *Iadimarco v. Runyon*, 190 F.3d 151, 164 (3d Cir. 1999)); *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999); *Young*, 135 S. Ct. at 1343-45.

In determining whether discrimination motivated an employment decision, courts consider whether the evidence of discrimination is "direct evidence" under the mixed-motive analysis set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989), or "indirect evidence" that satisfies the three-part burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Wesley*, 3 F. Supp. 3d at 230-31. This Court will first analyze whether direct evidence exists under the *Price Waterhouse* framework.

### 1. *Price Waterhouse* Framework

Under the *Price Waterhouse* framework, Plaintiff must present "direct evidence" that her inclusion in a protected class was a substantial motivating factor in Defendants' decision to terminate her. *See Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 508-09 (3d Cir. 2004). Direct evidence demonstrates "that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision" to fire Plaintiff. *Price Waterhouse*, 490 U.S. at 277; *see also Ward v. Ingersoll-Rand Co.*, 688 F. App'x 104, 107 (3d Cir. 2017). "It entails more than an inference of discriminatory motive and instead 'leads . . . to a rational presumption that the person expressing bias acted on it.'" *Ward*, 688 F. App'x at 107 (quoting *Fakete v. Aetna, Inc.*, 308 F.3d 355, 338 (3d Cir. 2002)).

Here, in support of her discrimination claims, Plaintiff submits her own deposition testimony to demonstrate that Ammerman told her that being out on maternity leave caused a delay in her tenure, was "inconvenient to the District," and therefore he would not recommend renewing her contract for the 2014-2015 school year. (Gurjar Dep. at 46:9-47:12; Sullivan Dep. at 30:3-12; ECF No. 40-6, Ex. 15; Pl.'s CSMF ¶¶ 55-56.) Plaintiff also submits a recording from a subsequent meeting with Ammerman during which he explained that he would not recommend renewing Plaintiff's contract even though the tenure issue had been resolved, which contradicts Ammerman's initial reason for recommending non-renewal.[5] Ammerman then told Plaintiff that "there was too much uncertainty [with regard to her citizenship status] . . . to commit [to her] long term." (ECF No. 40-6, Ex. 19 at 3.) When Plaintiff pressed Ammerman as to why he would not renew her contract, he stated it was her "interpersonal skills" and that "it might be . . . [her] cultural background versus for a better choice of words, the dysfunctionality of Americanism . . . ."[6] (*Id.* at 4-5.)

Ammerman's comments were not simply "stray remarks" unrelated to the decisional process. *Price Waterhouse*, 490 U.S. at 251. These statements were made in the context of explaining what Ammerman would say to a prospective employer if asked why Plaintiff's contract was not renewed for the subsequent school year and the comments clearly bore on Ammerman's decision to recommend non-renewal to Norwood. *See Price Waterhouse*, 490 U.S. at 251, 277 (explaining that "stereotyped remarks can certainly be evidence" of discrimination).[7] As the

---

[5] Both Plaintiff and Sullivan testified at deposition that initially, the only reason Ammerman stated he would not renew Plaintiff's contract was because he did not want to have to assess her for tenure during the middle of the school year.

[6] This Court interprets Ammerman's comment about Plaintiff's cultural background as a reference to Plaintiff being of Indian descent.

[7] *See also Page v. Payless ShoeSource, Inc.*, No. 10-2793, 2012 WL 28786, at *6 (D.N.J. Jan. 5, 2012) (holding that Plaintiff's deposition testimony that she was told she would not be hired because she was African-American and that "she should apply to a different [store] 'closer to the

7

Supreme Court reasoned in *Price Waterhouse*: "if we asked the employer at the moment of the decision what its reasons were and if we received a truthful response, one of those reasons would be . . . [the employees nationality or sex]," then Plaintiff's inclusion in a protected class played a motivating part in Defendants' decision. *Price Waterhouse*, 490 U.S. at 250. Moreover, it is of no consequence that Ammerman made these statements to Plaintiff after he had already recommended her non-renewal to Norwood. *See Fakete*, 308 F.3d at 339 (explaining that "statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus . . . even if the statements are not made at the same time as the adverse employment decision" are sufficient to shift the burden of persuasion to the Defendant). Viewing the evidence in the light most favorable to Plaintiff, this Court finds that Ammerman's comments, as alleged, are direct evidence that Ammerman displayed a discriminatory bias toward Plaintiff as it relates to her employment. *See Glanzman*, 391 F.3d at 512 (describing evidence as "direct" where it shows "discriminatory attitudes" about a protected activity that "were causally related to the decision to fire [the plaintiff]").

Because Plaintiff has presented the "necessary quantum of direct evidence of discrimination," the burden now shifts to Defendants to establish that Plaintiff would have been terminated even if Defendants had not considered her nationality, national origin, ancestry, and/or pregnancy. *Glanzman*, 391 F. 3d at 514. "This is a high burden on a motion for summary judgment because [Defendants] must leave no doubt that a rational jury would find that [Defendants] would have fired [Plaintiff] even if it had not been for the discriminatory statement[s]." *Id*.

---

projects'" constituted direct evidence of discrimination); *Davis v. Atl. League of Prof'l. Baseball Clubs, Inc.*, No. 07-5023, 2009 WL 1545844, at *3-7 (D.N.J. June 2, 2009) (finding statement by employer to employee that "he had been doing it a lot of years, and we're going to give the younger guys a chance" constituted direct evidence of age discrimination under *Price Waterhouse*).

In support of its motion, Defendants submit that Ammerman's recommendation of non-renewal was based on Plaintiff's interpersonal skills and the parental complaints made against her.[8] (Defs.' Statement of Material Facts ("Defs.' SMF") ¶ 93, ECF No. 37-3.) Specifically, Defendants contend that parents complained that Plaintiff was "rude" and/or "uncompassionate" and "demanded that their children have no further contact with Plaintiff." (*See* Defs.' SMF ¶¶ 5-8, 13, 15, 18, 22, 59, 67; *compare* Pl.'s CSMF ¶¶ 27-35.) However, the evidence does not support Defendants' position.

First, the record shows that during Plaintiff's tenure at Norwood, her written performance evaluations and observations were positive. (ECF No. 37-6, Exs. P, Q.) Defendants have not pointed to any documented performance deficiencies, warnings, or disciplinary actions during Plaintiff's employment that address her interpersonal skills or parental complaints. Second, it is undisputed that none of the complaints against Plaintiff were ever written up or investigated. All but one of the parental complaints pre-dated Ammerman's tenure at Norwood.[9] Third, notwithstanding those complaints, Plaintiff's contract was renewed twice. (Gatens Dep. at 99:18-21; Defs.' SMF ¶¶ 42-43.) Fourth, it is undisputed that Ammerman did not conduct a performance review of Plaintiff prior to recommending her non-renewal. (Pl.'s CSMF ¶¶ 27-28.) Based on the evidence, Defendants fail to meet their burden under *Price Waterhouse*. Thus, a genuine issue of

---

[8] Defendants also argue that Plaintiff's "pregnancy/maternity leave was discussed solely in reference to her annual evaluation" and accrual for tenure, and based on the timing of Plaintiff's maternity leave (November 2012 to June 2013), it was not a substantial factor in Defendants' decision to non-renew in April 2014. (ECF No. 37 at 23.) Defendants also argue that the decision to non-renew was made prior to Defendants learning of Plaintiff's citizenship status. (Ammerman Dep. at 137: 23-24; ECF No. 37 at 24.)

[9] The record shows that in April 2014, Ammerman first received a complaint from the "Y" family about how Plaintiff handled the investigation into an incident involving a Norwood student. (Pl.'s CSMF ¶¶ 31-32.) However, Ammerman did not conduct an investigation into this complaint nor did he issue a warning to Plaintiff or discipline her following the family's complaint. (*Id*. ¶¶ 33-35, 41, 46.)

material fact exists as to whether a reasonable jury could find that Plaintiff's nationality, national origin, ancestry, and/or pregnancy were a substantial motivating factor in Ammerman's decision to recommend non-renewal. *Anderson*, 477 U.S. at 247-48.

As this Court has concluded that "direct evidence" of discrimination exists, it need not address the existence of "indirect evidence." Under the *McDonnell Douglas* framework,[10] the same factual and evidentiary assertions would preclude summary judgment. As such, Defendants' motion for summary judgment as to Counts I, IV-VI is denied.

### B. Count VII: Aiding and Abetting Under NJLAD (Against All Defendants)

Under the NJLAD, it is unlawful for an employer to aid or abet in the "discriminat[ion] against [an employee] in compensation or in terms, conditions or privileges of employment." N.J. Stat. Ann. §§ 10:5-12(a), 10:5-12(e). In order to hold Defendants liable for aiding and abetting discrimination in violation of the NJLAD, Plaintiff must show:

> (1) the employer whom the defendant aided performed a wrongful act causing injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation.

---

[10] Defendants dispute that Plaintiff is a member of a protected class as it relates to her pregnancy claims. (Defs.' Br. in Support of Motion for Summary Judgment, ECF No. 37 at 27-28.) Under the PDA, where a defendant challenges a plaintiff's membership in the protected class, to establish a *prima facie* case, a plaintiff must do more than show she was pregnant. *Anderson v. Boeing Co.*, 694 F. App'x 84, 87-88 (3d Cir. 2017) (explaining that PDA claim requires "show[ing] that [Plaintiff] was either pregnant at or near the time of her termination, or that she remained affected by a pregnancy"). "Such a plaintiff must demonstrate . . . that she was 'affected by pregnancy, childbirth or related medical conditions' at the time of the adverse employment action." *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 754 (E.D. Pa. 2002). "Essentially, a plaintiff who was not pregnant at or near the time she was terminated must demonstrate that the effects of her pregnancy continued to exist at the time she was terminated, either in actual fact or *in the thoughts and actions of those responsible for firing her*." *Id*. (emphasis added). In light of Ammerman's repeated comments to Plaintiff regarding her maternity leave, this Court finds that an issue of fact exists as to whether Plaintiff was discriminated against on the basis of her pregnancy.

*Hicks v. N.J. Dep't. of Corrs.*, No. 16-0927, 2017 WL 4858122, at *4 (D.N.J. Oct. 27, 2017); *see also Cicchetti v. Morris Cty. Sheriff's Office*, 947 A.2d 626, 645 (N.J. 2008). Aiding and abetting requires "active and purposeful conduct." *Cicchetti*, 947 A.2d at 645. "If an employer is not liable for a NJLAD violation, a claim against an individual defendant for aiding and abetting must also fail." *Hicks*, 2017 WL 4858122, at *4 (citing *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 307 n.15 (3d Cir. 2004)).

As discussed above, Plaintiff's NJLAD discrimination claims will survive summary judgment. Therefore, this Court finds that a genuine issue of material facts exists as to whether either Defendant aided and abetted in the discrimination against Plaintiff. Therefore, Defendants' motion for summary judgment as to Count VII is denied.

### C. Count VIII: Retaliation Claim Under Title VII (As To Norwood Only)

"An employee's retaliation claims are subject to the *McDonnell Douglas* three-part burden-shifting framework[.]" *Boeing Co.*, 694 F. App'x at 88. In order to establish a retaliation claim under Title VII, Plaintiff must submit evidence showing that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). "Protected activities" include participating in certain Title VII proceedings, including the filing of an EEOC claim, *see Slagle v. Cty. of Clarion*, 435 F. 3d 262, 267-68 (3d Cir. 2006), and opposing discrimination made unlawful by Title VII. *See Moore v. Beers*, 121 F. Supp. 3d 425, 430 (D.N.J. 2015) (citing *City of Phila.*, 461 F.3d at 340-41). To establish an adverse employment action, Plaintiff "must show that a reasonable employee would have found the alleged retaliatory actions materially adverse in that they well might have dissuaded

11

a reasonable worker from making or supporting a charge of discrimination." *Id*. at 431 (internal quotations omitted).

If Plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to Defendants "to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Turner v. N.J. State Police*, No. 08-5163, 2017 U.S. Dist. LEXIS 48036, at *29-30 (D.N.J. Mar. 29, 2017) (quoting *Winters v. N. Hudson Reg'l Fire & Rescue*, 50 A.3d 649, 662 (N.J. 2012)) (internal quotation marks omitted). If Defendants' burden is met, the burden shifts back to Plaintiff to "persuade the fact finder that [Defendants'] reason was false and that retaliation was the real reason." *Id*. at 30.

Here, Plaintiff alleges that she was retaliated against on two separate occasions: first, Plaintiff alleges that after she objected to and/or questioned Ammerman's reasons for continuing to recommend non-renewal during the May 1, 2014 meeting, Ammerman refused to change his recommendation of non-renewal; and second, Plaintiff alleges that after she filed an EEOC Charge of Discrimination against Defendants, Ammerman directed the principal of Haworth Public Schools not to hire Plaintiff. (Am. Compl. ¶¶ 41-46, 99-101; ECF No. 40 at 38.) However, these allegations are not supported by the record.

With respect to Plaintiff's termination from Norwood, this Court finds that Plaintiff did not engage in an "activity protected by Title VII" when she questioned Ammerman as to the reason he was terminating her. *See Slagle*, 435 F.3d at 267 (explaining that a plaintiff must file a formal charge that alleges discrimination of the basis of one or more prohibited grounds in order to constitute a protected activity under Title VII). Because Plaintiff cannot establish that she filed an EEOC Charge of Discrimination prior to her termination, her retaliation claim based on termination must fail.

With respect to Plaintiff's prospective employment at Haworth Public Schools, this Court finds that although Plaintiff engaged in a protected activity when she filed an EEOC Charge of Discrimination against Defendants on or about November 14, 2014, (ECF No. 40 at 38; Am. Compl. ¶ 41.), there is no causal connection between the EEOC filing and her not receiving a job offer from Haworth Public Schools. Defendants presented undisputed evidence from Haworth's Hiring Committee[11] that: (a) after Plaintiff's first interview, the Hiring Committee determined that Plaintiff lacked the requisite experience that was being sought for the guidance counselor position at their school; (b) the Hiring Committee did not contact any of Plaintiff's references or prior employers; and (c) at no time prior to or after Plaintiff's interview was the Hiring Committee contacted by any individual employed by Norwood, including Ammerman, regarding Plaintiff. (ECF No. 37-6, Exs. DD, EE, FF ¶¶ 5, 8, 10-11, 13.) Additionally, Ammerman testified that he never contacted Haworth Public Schools regarding Plaintiff. (Ammerman Dep. at 214:6-14.) Thus, Plaintiff has failed to establish a *prima facie* case of retaliation as to her prospective employment at Haworth Public Schools. As such, Defendants' motion for summary judgment as to Count VIII is granted.

### D. Count IX: Tortious Interference (As To Ammerman Only)

"New Jersey state law requires that prior to filing a complaint against a public entity or public employee, the plaintiff must submit a notice of claim to the public entity within ninety days of the claim accruing." *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 745 (D.N.J. 2016) (citing N.J. Stat. Ann. § 59:8-8(a)). The notice must state "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and provide

---

[11] The Hiring Committee was comprised of Paul Wolford, Director of Elementary Education at Haworth, (ECF No. 37-6, Ex. DD), Carieann Malanga, Supervisor of Special Education at Haworth, (*id.*, Ex. EE), and Daniel O'Keefe, Supervisor of Curriculum & Instruction at Haworth, (*id.*, Ex. FF).

"[a] general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." N.J. Stat. Ann. §§ 59:8-4c, 59:8-4d. Failure to submit such notice precludes a plaintiff from proceeding with her claim. N.J. Stat. Ann. § 59:8-8(a); *see also Velez v. City of Jersey City*, 850 A.2d 1238, 1243-44 (N.J. 2004).

As an initial matter, Defendants argue that Plaintiff's tortious interference claim against Ammerman with regard to Plaintiff's prospective employment at Closter Public Schools must be dismissed because Plaintiff failed to comply with the notice provisions under the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1-1, *et seq*. (ECF No. 37 at 38-39.) In support of their argument, Defendants submit a Certification from Louise Napolitano, Norwood's Business Administrator/Board Secretary, who was, at all relevant times, responsible for maintaining files for matters that related to notices of tort claims. (ECF No. 37-6, Ex. JJ ¶ 2.) Ms. Napolitano certified that Norwood never received a notice of tort claim against Ammerman for allegedly interfering with Plaintiff's prospective employment at Closter Public Schools from Plaintiff or on behalf of Plaintiff. (*Id*. ¶ 3.) Plaintiff did not submit any documentation to rebut this evidence. (ECF No. 40 at 39-40.) Thus, there is no genuine issue for trial. *Shields*, 254 F.3d at 481. Plaintiff's failure to submit the requisite notice of claim to Defendants precludes her from pursuing a claim against Ammerman for any alleged tortious interference as it relates to prospective employment at Closter Public Schools.

However, it is undisputed that Plaintiff complied with the notice provision as it relates to her claim for tortious interference with her prospective employment at Haworth Public Schools. Thus, to maintain this claim under New Jersey law, Plaintiff must prove "(1) a reasonable expectation of economic advantage to plaintiff, (2) interference done intentionally and with 'malice,' (3) causal connection between the interference and the loss of prospective gain, and (4) actual damages." *Fidelity Eatontown, LLC v. Excellency Enter, LLC*, No. 16-3899, 2017 WL

14

2691417, at *5 (D.N.J. June 22, 2017) (quoting *Varrallo v. Hammond Inc.*, 94 F.3d 842, 848 (3d Cir. 1996)).

As this Court has concluded that no credible evidence or facts exist to support Plaintiff's claims relating to prospective employment with Haworth Public Schools, likewise, Plaintiff cannot sustain a claim for tortious interference against Ammerman. Accordingly, Defendants' motion for summary judgment as to Count IX is granted.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED** as to Counts VIII and IX and **DENIED** as to Counts I, IV-VII. An appropriate order follows.

                                                /s/ Susan D. Wigenton
                                           **SUSAN D. WIGENTON, U.S.D.J.**

Orig:        Clerk
cc:          Steve C. Mannion, U.S.M.J.
                Parties